# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| RONNIE JEROME JACKSON, III,<br><br>Plaintiff,<br><br>v.<br><br>JEFF GUTZMER, NATALIE LESEMAN, MICHELLE SMITH, and TAMMY WHERLEY, *in their individual capacities*; and TOM ROY, *in his official capacity*,<br><br>Defendants. | Civil No. 16-3831 (JRT/BRT)<br><br>**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION** |

Ronnie Jerome Jackson, III, OID #239471, MCF-Stillwater, 970 Pickett Street North, Bayport, MN 55003, *pro se* plaintiff.

Lindsay LaVoie, Assistant Attorney General, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, for defendants.

Plaintiff Ronnie Jerome Jackson, III, brings this action under 42 U.S.C. § 1983. He alleges that Defendants, all of whom work at the Minnesota Correctional Facility – Oak Park Heights ("MCF-OPH"), violated his constitutional rights by denying him mail by removing several pictures from his mail under the false pretense that they depicted nudity. Presently before the Court are Jackson's Objections to U.S. Magistrate Judge Becky R. Thorson's Report and Recommendation ("R&R") recommending that the Court grant Defendants' Motion for Summary Judgment. Upon de novo review of Jackson's specific objections, the Court will find that no genuine dispute of material facts remains. The Court

will thus overrule Jackson's objections, adopt the R&R in part as described herein, and grant Defendants' Motion for Summary Judgment.

## BACKGROUND

In August 2016, while detained at MCF-OPH, Plaintiff Ronnie Jackson received sixty-one photographs in the mail. (Compl. ¶ 9, Nov. 4, 2016, Docket No. 1-1.[1]) Minnesota Department of Corrections ("DOC") officials confiscated twenty-three of these photographs pursuant to a DOC policy prohibiting inmates from receiving nude or sexually explicit materials. (*Id.*) After following the DOC's procedures for appealing the decision to remove these twenty-three photographs as contraband, Jackson filed suit against Defendants Jeff Gutzmer, Natalie Leseman, Michelle Smith, and Tammy Wherley in their individual capacities, alleging that they wrongfully confiscated five of the twenty-three photographs. (*Id.* ¶¶ 10, 13-16.)

In November 2016, DOC staff confiscated an art catalog mailed to Jackson because it contained nudity. (Compl. at 6-7, Dec. 29, 2016, Civil No. 16-4393, Docket No. 1.) Jackson brought a second lawsuit against the same defendants in their individual capacities, as well as Tom Roy, Commissioner of the DOC, in his official capacity, alleging that DOC staff had violated his First Amendment rights in confiscating the catalog. (*Id.* at 7-8.)

In March 2017, DOC staff confiscated a book called "*Lighting the Nude*," which Jackson alleges is an educational book on photography. (Compl. ¶¶ 1, 10, Apr. 10, 2017,

---

[1] Unless otherwise specified, citations are to the docket for Civil Case No. 16-3831.

Civil No. 17-1109, Docket No. 1.) Jackson filed a third lawsuit, against Defendants Smith and Wherley in their individual capacities and Roy in his official capacity. (*Id.* ¶¶ 7-9.)

The Court consolidated the three cases. (Mem. Op. and Order Adopting R. & R.s, Sept. 20, 2017, Docket No. 49.) Defendants brought the Motion for Summary Judgment now before this Court. (Defs.' Mot. for Summ. J., Apr. 12, 2018, Docket No. 74.) In his opposition, Jackson voluntarily dismissed Tom Roy , all claims related to retaliation, and all claims related to confiscation of the art catalog. (Pl.'s Mem. Opp. at 2, May 9, 2018, Docket No. 86.) The Court will therefore dismiss these claims.

Magistrate Judge Thorson issued an R&R on September 28, 2018, recommending that Defendants' Motion for Summary Judgment be granted. (R. & R. at 21, Sept. 28, 2018, Docket No. 94.) Jackson objected to the R&R on October 11, 2018. (Objs. to R. & R., Oct. 11, 2018, Docket No. 95.)

After Jackson's voluntary dismissals, two claims remain before the Court. First, Jackson alleges Defendants confiscated the five photographs and the book *Lighting the Nude* in violation of his First Amendment rights. Second, Jackson alleges Defendants denied him due process in his appeal for the confiscation of the five photographs in violation of the Fourteenth Amendment. Jackson requests compensatory and punitive damages, as well as an injunction requiring Defendants to return or replace the confiscated materials.

Defendants confiscated Jackson's photographs and book under MN-DOC Mail Policy 302.020 (the "Mail Policy") and Contraband Policy 301.030 (the "Contraband Policy"). (Aff. of Natalie Leseman ("Leseman Aff.") ¶¶ 6, 11Apr. 12, 2018, Docket No.

76.) Under the Mail Policy, "[i]ncoming/outgoing mail . . . is not authorized if it . . . [c]ontains contraband or pertains to sending contraband into or out of the facility." (*Id.* ¶ 6, Ex. 1 at 6.)

Under the Contraband Policy, "[c]ontraband/prohibited objects include . . . [p]ublished and non-published materials (books, magazines, photos, drawings, etc.) . . . [f]eaturing . . . nudity, or sexually explicit written content where the central theme of the items promotes contraband or prohibited content." (Leseman Aff. ¶ 11, Ex. 2 ("Contraband Policy") at 14.) The Contraband Policy defines nudity as:

> the showing (including see-through covering) of human male or female genitals, anus or pubic area or the showing (including see-through covering) of the female breast or a substantial portion of the breast below the top of the nipple. Examples of see-through coverings that are not permitted include "pasties," lace, mesh, and body paint through which the covered area is showing; coverings emphasizing the depiction of human genitals; or tight-fitting clothing through which the contours of the genitals are clearly visible. This definition does not include published material containing nudity illustrating medical, educational or anthropological content.

(*Id.* at 13.) The Contraband Policy also prohibits "[s]exually explicit materials where the central theme of the item promotes contraband or prohibited content (published or non-published) containing any pictorial display or written descriptions of" various sexual acts, and "sex-related materials determined to constitute a risk to the safety and security of the facility, facilitate criminal activity, or undermine offender/resident rehabilitation." (*Id.* at 14-15.)

The DOC offers three reasons for prohibiting access to these materials. First, offenders' access to sexually explicit materials and materials containing nudity creates a security risk. (Aff. of Tammy Wherley ("Wherley Aff.") ¶ 11, Apr. 12, 2018, Docket No. 79.) Second, such materials interfere with sex offender rehabilitation. (*Id.* ¶ 12.) And third, they create a hostile work environment for prison staff. (*Id.* ¶ 13.)

MCF-OPH staff enforce the Mail Policy and Contraband Policy. (Leseman Aff. ¶¶ 5–6.) Staff separate facility mail, legal mail, and non-legal offender mail. (*Id.* ¶ 9.) Each piece of incoming non-legal offender mail is opened and inspected by staff. (*Id.*) Under Directive 302.250, the MCF-OPH Property Department staff open incoming packages and inspect their contents for weapons or other contraband. (Aff. of Donald Stiff ("Stiff Aff.") ¶¶ 6, 9, Apr. 12, 2018, Docket No. 77.)

If a staff member believes a piece of mail or photo is prohibited, the item is stored and a Notice of Non-delivery is sent to the offender. (Leseman Aff. ¶ 12.) The offender may appeal the non-delivery decision to the mailroom supervisor within ten days. (*Id.* ¶ 13.) The mailroom supervisor then reviews the item and returns a written response to the offender. (*Id.*) An offender may then request a review of the supervisor's decision by the facility's Correspondence Review Authority ("CRA"), an individual or group of individuals appointed by the facility's Warden to review decisions regarding offender mail. (*Id.* ¶ 14.) The CRA reviews the confiscated item, determines whether it should be returned to the offender, and issues a final, written decision. (*Id.*) If offenders do not appeal the denial of a mail item within thirty days, or do not tell mailroom staff how to dispose of the item, the item is destroyed. (*Id.* ¶ 17.)

In this case, Jackson's five photographs were confiscated on August 30, 2016, (Wherley Aff. ¶ 26.) DOC staff had determined the photographs contained nude images and were a security risk pursuant to the Contraband Policy. (*Id.*; Compl. ¶ 9.) Jackson was provided with a Notice of Non-Delivery of Mail/Package related to the confiscated photographs. (Leseman Aff. ¶¶ 23, 30.)

Jackson submitted four appeals for the confiscation of four sets of photographs, including for the five photographs at issue. (*See* 2d Aff. of Tammy Wherley ¶ 2, Ex. A at 1-3, May 21, 2018, Docket No. 90-1.) On August 23, he appealed the denial of eight pictures. (*Id.* at 1.) On August 30, he sent two separate appeals, one appealing non-delivery of his photos "for the form attached" and one appealing non-delivery of 9 other photos. (*Id.* at 2-3.) And on September 8, Jackson sent a kite, a prisoner communication form, to Wherley and the CRA asking about "23 of [his] pictures" that had been confiscated and appealing the latest confiscation of one photograph. (*Id.* at 6.)

On September 1, Jackson sent Wherley a kite asking her what was going on with his three appeals. (*Id.* at 4.) She responded the next day that Jackson should "be patient" and that denial of pictures needed to go through the CRA. (*Id.*) On September 8, Jackson sent another kite to Wherley and the CRA asking what was going on with the review of his 23 pictures. (*Id.* at 6.) On September 9, Lieutenant Gutzmer responded directly on the appeals forms for three of Jackson's appeals. (*Id.* at 1, 3, 5.) On September 11, Jackson sent a kite to the CRA stating that he was submitting three appeals to the CRA. (*Id.* at 7-9.) He noted that Gutzmer had not responded to one of his appeals. (*Id.* at 7.)

On September 19, Jackson sent another kite to Wherley asking what was going on with the review of his "23 pictures." (*Id.* at 10.) Wherley responded two days later that "[t]hey [were] in the process of being reviewed by the CRA for signatures." (*Id.*)

On September 22, Jackson received a letter from the CRA stating that it had "reviewed [Jackson's] three appeals dated September 11, 2016, and [Jackson's] kite to AWA Wherley/[CRA] dated September 8, 2016." (Decl. of Ronnie Jackson ("Jackson Decl.") ¶ 3, Ex. 5 at 11, May 9, 2018, Docket No. 87-1.)

On September 27, Jackson sent a kite to Warden Michelle Smith referring to his "appeal form for denial of 5 of [his] pictures" for which he had not received a response. (*Id.* at 12.) A representative of the Warden wrote back the following day indicating that the mail room and CRA had confirmed that Jackson had received a response. (*Id.* at 13.)

Because of the multiple appeals—some on the same day and for nearly identical issues—and the multiple kites sent regarding the appeals, there appears to have been some confusion on the part of both Jackson and the prison staff concerning Jackson's photographs and appeals. (*See* Wherley Aff. ¶ 26; LaVoie Aff. ¶ 2, Ex. 1 at 3.) Jackson alleges that he never received a response specifically directed to the five photographs at issue in this case. (Jackson Decl. ¶ 3.) The five photographs were destroyed on November 17, 2016. (Leseman Aff. ¶ 30.) Jackson alleges these pictures were destroyed "under the false pretense they depicted nudity." (Compl. ¶ 17.)

DOC staff also determined Jackson's book, *Lighting the Nude*, violated the Contraband Policy because a majority of its pages contained nude photographs. (Wherley Aff. ¶ 25.) Jackson alleges that *Lighting the Nude* is an educational book that he sought

-7-

due to his interest in photographic art and that it falls under the exception in the Contraband Policy's definition of nudity. (Compl. ¶¶ 10-11, Civil No. 17-1109.)

## DISCUSSION

### I. STANDARD OF REVIEW

#### A. Report and Recommendation

Upon the filing of an R&R by a Magistrate Judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which the objections are made and provide a basis for those objections." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015) (quoting *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008)). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). Non-specific or repetitive objections are reviewed for clear error. *Montgomery*, 98 F. Supp. 3d at 1017.

Jackson makes five objections. First, Jackson objects to the R&R in its entirety. Second, Jackson objects to alleged credibility determinations made by the Magistrate Judge. Third, Jackson objects to the Magistrate Judge's recommendation to grant the summary judgment motion regarding his Fourteenth Amendment claim. Fourth, Jackson objects to the Magistrate Judge declining to rule on other issues, such as qualified immunity for Defendants and Jackson's requests for punitive damages and injunctive relief. Finally,

Jackson argues that the Magistrate Judge did not provide an impartial review of the factual issues.

Jackson's objection to the R&R in its entirety is not specific or proper. Thus, the Court will review the R&R for clear error. Jackson's other objections are specific and proper, so the Court will review the objected-to portions of the R&R de novo.

### B. Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## II. CREDIBILITY DETERMINATIONS

Jackson argues that the Magistrate Judge made impermissible credibility determinations regarding three factual findings: (1) that the five confiscated photographs

depict nudity; (2) that the Contraband Policy was properly applied to his book *Lighting the Nude*; and (3) that *Lighting the Nude* contains sexually explicit images.

### A. The Photographs

The Magistrate Judge did not improperly resolve a factual dispute related to the five confiscated photographs. Defendants submitted several affidavits stating that the photographs depict nudity as defined by DOC policy. (Wherley Aff. ¶ 26; Leseman Aff. ¶ 30.) Jackson, however, has produced no evidence to show that the withheld photographs do not depict nudity.[2] Jackson merely points to the allegations in his Complaint as evidence that the five photographs do not depict nudity. Mere allegations in a complaint are not enough to create a genuine dispute of material facts. *Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Jackson did not submit any evidence to dispute the facts attested to in Defendants' affidavits. In short, Jackson did not create a dispute of material fact.

In the absence of any factual dispute as to whether the five photographs depict nudity, the Magistrate Judge did not make an impermissible credibility determination when

---

[2] Jackson argues that where the photographs in question have been destroyed, he is entitled to an adverse inference against Defendants, citing *Payne v. Britten*, 749 F.3d 697, 702 (8th Cir. 2014) ("In the absence of such evidence, the district court is bound to take the plaintiff's allegations as true and presume that the mail does not, in fact, contain material that runs afoul of any neutral and valid restrictions."). The "evidence" referenced in *Payne*, however, does not refer to the confiscated mail itself, but any and all evidence that shows the mail was withheld on legitimate grounds. *See id.* (quoting *Kaden v. Slykhuis*, 651 F.3d 966, 969 (8th Cir. 2011) ("On appeal, we must independently review the evidence to determine whether the decision to apply the regulation and withhold the particular mail items was an exaggerated response to prison concerns . . . .")). Here, Defendants have produced sufficient evidence in the form of affidavits to show that the five confiscated photographs violated the Contraband Policy.

finding that the five photographs depict nudity. Accordingly, the Court will overrule Jackson's objection on this ground, adopt the Magistrate Judge's recommendation, and grant Defendants' Motion for Summary Judgment.

### B. The Book

The second and third credibility determination objections can be resolved together. The Magistrate Judge did not improperly make credibility determinations regarding whether *Lighting the Nude* constituted contraband. An analysis of the validity of a prison regulation that burdens fundamental rights involves determining whether the regulation is reasonably related to legitimate penological interests or whether it represents an exaggerated response to those concerns. *Turner v. Safley*, 482 U.S. 78, 87 (1987). Jackson objects to the Magistrate Judge's determination that the application of the Contraband Policy to *Lighting the Nude* was not an exaggerated response because, he argues, this resolved a factual dispute.

*Lighting the Nude* contained images depicting nudity. Defendants submitted several pages of photographs from *Lighting the Nude* that show nudity as defined by the Contraband Policy. (Wherley Aff. ¶ 25, Ex. B, Apr. 12, 2018, Docket No. 80.) Upon de novo review of those pages, *Lighting the Nude* clearly violates the Contraband Policy because the female breast is clearly visible on several pages of the book. There is no factual dispute.

The Court need not reach Jackson's objection to the characterization of *Lighting the Nude* as depicting sexual material because it clearly violates the Contraband Policy on nudity.

The only issue that remains is whether *Lighting the Nude* qualifies under the exception to the Contraband Policy on nudity. The policy makes an exception for "published material containing nudity illustrating medical, educational, or anthropological content." (Contraband Policy at 13.) Neither party disputes that *Lighting the Nude* does not contain medical or anthropological content. Jackson instead alleges that it contains educational content and thus falls within the exception to the Contraband Policy on nudity.

The Magistrate Judge analyzed Jackson's claim as one for content-based restrictions—restricting *Lighting the Nude* for its content, despite it being an educational book—rather than an "as applied" challenge to the Contraband Policy. But even under an as-applied analysis, Jackson's claim must fail.[3] Tammy Wherley, Assistant Warden of Administration, reviews materials to determine if they fall within the exceptions to the nudity policy. (Wherley Aff. ¶ 20.) To do so, Wherley considers how the materials relate to an offender's studies. (*Id.*) For example, if the offender claims he is studying art, Wherley considers whether the offender has ordered other art supplies or study materials, and whether the offender has taken an art class while incarcerated. (*Id.*) Wherley attested that, "[i]f [she] can establish that an offender is an active artist, it helps [her] decide if [she]

---

[3] Jackson cites to Defendants' interrogatory responses for the propositions that to fall within the exception to the nudity policy (1) materials need not have been given to inmates by prison staff; (2) materials do not need to be taught within the prison; (3) materials need not be approved by prison staff; (4) there are no specifications as to what type of medical, educational, or anthropological content inmates are allowed to receive; and (5) there is no definition in relation to the content of material allowed under the exception. These propositions mischaracterize Defendants' interrogatory responses, and do not address the issue of whether, as applied to *Lighting the Nude*, withholding the book is an exaggerated response.

should allow education materials that are on the borderline of featuring nudity." (*Id.*) But, even if she determined the offender to be an active artist, she would not allow any offender to receive a book on how to draw or photograph nudes. (*Id.*)

Jackson has not created a genuine dispute of material fact regarding his as-applied challenge. The Court does not need to make any credibility determinations to find that the application of the Contraband Policy to *Lighting the Nude* was not exaggerated.

Although *Lighting the Nude* is a book designed to teach photographers how to use lighting when taking nude photographs, confiscating it pursuant to the Contraband Policy was not an exaggerated response. The exception for educational material does not have its plain meaning. To read "educational" to include books, such as *Lighting the Nude*, that not only contain nudity, but feature it, would read the exception to swallow the entire rule and render the rule ineffective. An offender would have no need for other materials that depict nudity that also violate the DOC Contraband Policy if they can simply order *Lighting the Nude* to serve the same purpose—namely, to have images that depict nudity—and not violate the Contraband Policy. The other excepted categories, medical and anthropological materials, would not generally **feature** nudity, rather minor nudity might be incidental to a discussion of certain topics. The exception for educational materials is to be read similarly. It would logically apply to similar materials that do not feature nudity, but may incidentally touch on it.

There remains no genuine dispute of fact as to Jackson's challenge to the Contraband Policy as applied to *Lighting the Nude*. Thus, the Court will overrule Jackson's

objection on this ground, adopt the Magistrate Judge's recommendation, and grant Defendants' Motion for Summary Judgment.

### III. FOURTEENTH AMENDMENT CLAIM

Jackson objects to the Magistrate Judge's recommendation to grant summary judgment on his Fourteenth Amendment claim because: (1) in observing *sua sponte* that prisoners do not have property interests in items designated as contraband, the Magistrate Judge "pierced the veil of impartiality and denied the plaintiff an opportunity to fairly litigate his case"; (2) the Magistrate Judge impermissibly resolved multiple factual disputes; and (3) the R&R failed to reach the merits of the claim because it did not decide whether defendants allowed him to appeal the withholding of the photos. (Objs. at 7.)

As to Jackson's first objection, there is no indication that the Magistrate Judge has been impartial. Defendants sought summary judgment on Jackson's due process claim; thus, the issue was properly before the Magistrate Judge, and she did not reach it sua sponte.

As to Jackson's second objection, the Magistrate Judge did not make any factual determinations on Jackson's Fourteen Amendment claim, instead finding that Jackson did not have a property interest in contraband.

As to Jackson's third objection, the Court will construe Jackson's objection as an argument that the Magistrate Judge should have considered the factual support behind Jackson's due process claim. The Court will review this claim de novo.

First, "a violation of prison regulations in itself does not give rise to a constitutional violation." *Bonner v. Fed. Bureau of Prisons*, 196 Fed. Appx. 447, 448 (8th Cir. 2006).

Thus, Jackson's claim for a due process violation related to the failure of prison officials to follow prison policies must fail.

Jackson does, however, have a right to procedural due process when his photographs were confiscated. *Id*. (citing *Procunier v. Martinez*, 416 U.S. 396, 417 (1974) (overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989))). "[T]he decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Procunier*, 416 U.S. at 417. The DOC is required provide Jackson with, at minimum, notice of withholding, a reasonable opportunity to appeal the decision, and that the appeal be referred to a prison official other than the one who made the original withholding decision. *Id.* at 418-19. The DOC provided Jackson with a Notice of Non-Delivery upon making the decision to withhold the five photographs. This satisfies the notice requirement. *See id.*

The DOC provided Jackson with an adequate appeals process. First, the process allowed Jackson to appeal to the Mail Room supervisor, Jeff Gutzmer, someone who did not make the original determination that the five photographs were contraband. Second, beyond appeal to a supervisor, Jackson was afforded the opportunity to have an independent review board, the CRA, review his appeal. While some of the dates and numbers of photographs are unclear, it is clear that the CRA reviewed the five photographs at issue. Between August 23 and September 8, Jackson sent four appeals to Gutzmer. On September 8, after Jackson had not yet received a response from Gutzmer on his initial three appeals, Jackson sent a kite to Wherley and the CRA. In that kite, Jackson asked after all 23 photographs that had been confiscated up to then. On September 9, Gutzmer

responded to three of Jackson's appeals. Jackson then sent these three appeals to the CRA via a kite sent September 11. The CRA sent a response to Jackson referencing his three appeals from September 11, as well as Jackson's September 8 kite that referenced all 23 photos. It is clear, based on the CRA response, that the CRA reviewed and considered the three appeals from September 11, and the 23 photographs referenced in the September 8 kite.

Further, when Jackson sent a kite to Warden Michelle Smith on September 27, 2016, asking after the appeal of the five photos at issue, Smith confirmed that the mail room and the CRA had reviewed the appeal, and that a response had been given to Jackson. Thus, Jackson received more than adequate process, having been allowed to appeal the withholding of his photographs not only to Gutzmer, but also to the CRA. Smith's response is additional process that Jackson received on top of the more than adequate process of appealing to Gutzmer and the CRA.

Because there remains no genuine dispute of material fact as to whether Jackson was afforded a reasonable appeals process, the Court will overrule Jackson's objections and grant summary judgment as to the due process claim.

**IV. OTHER ISSUES**

Jackson's fourth objection is a collection of objections to the Magistrate Judge declining to rule on: (1) Defendants' qualified immunity claim; (2) punitive damages; and (3) injunctive relief. The Magistrate Judge's recommendation fully disposes of the instant

action, thus, she need not have reached these other issues specifically. Because the R&R recommends granting summary judgment in full, the other issues are moot.

## V. IMPARTIALITY

Jackson makes a final objection to the R&R because he alleges that the Magistrate Judge did not provide an impartial review of the facts. "When analyzing a judicial-bias claim under the Due Process Clause, we start with 'a presumption of honesty and integrity in those serving as adjudicators.'" *In re Morgan*, 573 F.3d 615, 624 (8th Cir. 2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The Court must determine whether the record supports a claim of bias. *See id.* Jackson does not support this final allegation of bias with any facts from the record. The Court has conducted an independent review of the record and sees no indications of bias.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation [Docket No. 95] are **OVERRULED.**

2. The Magistrate Judge's Report and Recommendation [Docket No. 94] is **ADOPTED.**

3. Defendants' Motion for Summary Judgment [Docket No. 74] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 27, 2019            ____s/John R. Tunheim____
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
           United States District Judge